IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE A. RAMOS-ROSADO,

    Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIVIL NO. 11-2048 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiff José Ramos-Rosado (hereafter plaintiff "Ramos-Rosado") filed this federal complaint seeking judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying his application for a period of disability and ensuing disability benefits. (Docket No. 1). [1]

On April 20, 2012, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 5 and 6). On May 18, 2012, plaintiff Ramos-Rosado filed, through Atty. Salvador Medina De-La-Cruz, a consent to proceed before the Magistrate Judge. (Docket No. 8). [2] On May 24, 2012, Atty. Medina De-La-Cruz filed plaintiff's memorandum of law. (Docket No. 10). Thereafter, the Commissioner filed his memorandum. (Docket No. 16).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

## BACKGROUND

On January 11, 2005, plaintiff Ramos-Rosado filed an application for disability benefits with onset date of disability of January 20, 2003, due to cervical condition and a mental component. After the application was initially denied, the requested administrative hearing was held. Thereafter, the presiding Administrative Law Judge (hereafter "ALJ") issued an opinion finding plaintiff Ramos-Rosado was not disabled for he could still perform his past relevant work or other jobs which were available in the national economy. The Appeals Council denied the request for review.

Plaintiff Ramos-Rosado now seeks herein judicial review of the final decision of the Commissioner on grounds the hypothetical questions posed to the vocational expert at the administrative hearing did not accurately reflect all of the limitations for the responses to be considered substantial evidence in support of the ALJ's determination. Plaintiff Ramos-Rosado also avers the ALJ failed to rely on the opinions of treating physicians for not giving proper weight or explaining why same were not considered. (Docket No. 10, pp. 3-4). The Commissioner's memorandum of law summarizes the medical evidence of record that served as ground to the ALJ's findings. (Docket No. 16). In addition to the vocational expert, there was a medical expert Dr. Charles Payne (hereafter "Dr. Payne") who testified at the administrative hearing. Said expert opined plaintiff Ramos-Rosado could not lift heavy objects and was limited as to no more than ten pounds occasionally. Dr. Payne also testified he was unable to offer an opinion regarding plaintiff's ability to stand during an eight-hour work shift for he did not examine the patient but he considered, based on the medical record, that plaintiff Ramos-Rosado should not be working and the musculo-

José Ramos-Rosado v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 3

skeletal condition present equated the severity of the listing of impairments with the presence of degenerative disc disease in the neck and psychomotor weakness. (Docket No. 5, Transcript, pp. 318-320).

The ALJ considered the medical evidence of record, the testimony of a vocational expert Dr. Héctor Puig (hereafter "Dr. Puig") and of the medical expert, Dr. Payne, and issued an opinion on June 30, 2009, finding plaintiff Ramos-Rosado retained the residual functional capacity to perform his previous work as a quality control clerk. Through the vocational expert's testimony, the ALJ also ruled there were other jobs, of light level of exertion, that were simple and unskilled that plaintiff Ramos-Rosado could also perform, such as ticketer or ticket labeler. These jobs existed in significant numbers in the national economy and were within the residual functional capacity of plaintiff, for which he was found not under disability.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff Ramos-Rosado claimed disability due to exertional and non-exertional conditions during a relevant period of January 23, 2003, through June 30, 2007, the date of his last insured status. After the application was denied initially and on reconsideration, the requested administrative hearing was held on June 18, 2009. Plaintiff waived being present at the hearing, wherein the ALJ entertained the testimonies of a vocational and a medical expert and plaintiff was represented by counsel. The ALJ stated plaintiff Ramos-Rosado had complaints of having headaches, cervical pain, partial motor seizures, chronic lower back pain and a major depressive disorder with panic attacks. On June 30, 2009, the ALJ issued an opinion denying the application upon finding plaintiff Ramos-Rosado was

able to perform his previous relevant work as a quality control clerk for it was light, unskilled, simple and routine.

### THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff: (1) met the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through June 30, 2007; (2)  had not engaged in substantial gainful activity since the alleged onset date of disability on January 20, 2003; (3) allegations of severe impairments or combination thereof because of headaches, cervical pain, partial motor seizures, chronic lower back pain and moderate major depressive disorder with panic traits,  had more than a minimal affect on ability to perform basic work-related activities, and constituted severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record plaintiff Ramos-Rosado retained the residual functional capacity to perform the full range of light  type of work except for executing complex instructions.  He was also considered able to follow and execute simple and repetitive instructions and, thus, perform unskilled, simple, repetitive work activity not involving contact with the public and/or frequent contact with co-workers and supervisors.  (Docket No. 5, Transcript pp. 16-21). The above residual functional capacity would not allow the former work that was of medium level of exertion, such as merchandise delivery person, but still allowed another relevant work as quality control clerk that was of light exertion and unskilled.

<u>José Ramos-Rosado v. Commissioner of S.S.</u>
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 5

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence.  *See* <u>Manso-Pizarro v. Secretary of Health and Human Services</u>, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. <u>Nguyen v. Chater</u>,  172 F.3d 31, 35 (1st Cir. 1999); <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986); <u>Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work.   42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d);  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from  performing the work he/she has performed in the past.  If the claimant is able to perform his/her previous work, he/she is not disabled.  §§ 404.1520(e).  If it is determined that the claimant cannot perform this

José Ramos-Rosado v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 7

work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The ALJ in the instant case examined and analyzed plaintiff's case following the relevant five steps above described, as applicable, and although at step four the ALJ considered Ramos-Rosado could still perform his past relevant work as quality control clerk, he proceeded to analyze the existence of other type of work which was available and could be performed, such as classifier of products, ticketing or ticket labeling. (Docket No. 5, Transcript p. 326).

The claimant has the burden under steps one through four of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Ramos-Rosado was found by the ALJ able to perform his previous past relevant work as quality control clerk and, thus, there would have been no need not continue from the examination after said step four consideration. By determining the residual functional capacity for full range of light kind of work, logically following that other type of light and unskilled work could also be performed. Upon the testimony of a vocational expert Dr. Puig, the ALJ concluded Ramos-Rosado was not under disability for there were also other jobs available that he could still perform. (Docket No. 5, Transcript, p. 324-327).

Plaintiff's memorandum of law submits several aspects of the administrative proceedings in regards to the medical evidence and the combination of plaintiff's impairments, particularly that no proper weight was given by the ALJ to the treating physicians' medical reports. (Docket No. 10, p. 3). Plaintiff's memorandum also avers the vocational expert Dr. Puig was not presented with the full panoply of relevant hypothetical questions that accurately reflected all of plaintiff's limitations. (*Id.*). Unless a vocational expert's testimony contains all relevant facts, it cannot be considered to have probative value and such facts cannot be sufficient when the ALJ has ignored evidence, misapplied the law or judge matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Insofar as not giving proper weight to the treating physicians' record, Dr. José J. Zamora, a psychiatrist, the ALJ is required to provide the specific reasons for the weight given or not. Dr. Zamora treated plaintiff Ramos-Rosado for consecutive and regular treatment as of May 7, 2004 and submitted numerous reports which clearly documented the symptoms, signs, conditions, and limitations through out these years regardless that no progress notes were included with Dr. Zamora's reports. The reports also refer to attention and concentration as being markedly impaired with judgment poor and memory diminished. There is also reference to limited capacity to maintain regular attendance, complete a normal workday without interruptions at a consistent pace. The patient was found markedly limited also in accepting instructions and responding appropriately to criticism from supervisors and getting along with co-workers, dealing with normal stress and/or being aware of normal hazards. The record shows that none of these conditions and

symptoms were presented to the vocational expert when the hypothetical questions were posed by the ALJ.  (Docket No. 10, pp. 6-7).

As to the vocational expert Dr. Puig, the hypothetical questions proposed by the ALJ included only that plaintiff Ramos-Rosado could execute in the light range of exertion, repetitive and simple tasks and not having contact with the public and only occasional contact with supervisors and workers.  No reference to the mental limitations were included and other limitations of the cervical and spine condition were omitted. (*Id.*, p. 13).

Thus, unless the ALJ deploys the proper legal standards and finds facts upon proper quantum of evidence, no substantial evidence supports the administrative decision.  In the present case, there is also additional evidence by a medical expert who testified at the administrative hearing, a neurologist, Dr. Payne, who considered Ramos-Rosado's cervical and lumbar conditions limited the patient to lifting and carrying a maximum of ten pounds occasionally and further indicated he was unable to work for the condition was severe enough to meet the Listings of Impairments as to disorders of the spine.

The Court of Appeals the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. See Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987). Notwithstanding, the ALJ made the determinations as to plaintiff Ramos-Rosado's limitations based on his longitudinal analysis of the evidence and affording little credibility to its own medical expert Dr. Payne under an argument that he was unresponsive to questions or gave conflicting testimony. If anything, Dr. Payne was being cautious in his responses in that he had not examined the patient to determine residual functional capacity and stating that, upon the examination of the medical evidence as a whole, he reached a conclusion that the spine condition, including the cervical condition, would not allow plaintiff to work.

Insofar as to the hypothetical questions to the vocational expert Dr. Puig, the testimony of a vocational expert who, in response to the ALJ's hypothetical, opined that plaintiff could perform a number of jobs cannot serve the ALJ as a finding of plaintiff not being not disabled for the hypothetical questions impermissibly omitted any mention of a

significant functional limitation arising from the uncontested medical conditions of musculo-skeletal and mental condition which do not rest on controverted medical evidence as to their existence and limitations. *See* <u>Rose v. Shalala</u>, 34 F.3d 13,19 (1st Cir. 1994) (remanding for further proceedings because the ALJ did not ask the vocational expert proper questions about non-exertional limitations); *see, e.g.*, <u>Arocho v. Secretary of HHS</u>, 670 F.2d 374, 375 (1st Cir. 1982).

Succinctly, a review of the medical evidence considered by the ALJ as to plaintiff Ramos-Rosado shows he was hospitalized at the Bella Vista hospital in 2003 after an accident to receive neurological treatment. There were complaints of seizures and numbness of the right side of the body in February 2003. An MRI dated September 2004 showed white matter ischemic changes. Treating neurologist Dr. Alfredo Pérez-Canabal referred to partial motor seizures and headaches after first examining Ramos-Rosado in 2005. The ALJ concluded that, although the patient had a history of seizures, a longitudinal analysis of the record should allow a conclusion that these were not significant or persistent for the patient did not present cuts, bruises, marks or any significant sequel of seizures or bodily trauma that results from frequent seizures. (Docket No. 5, Transcript, p. 17).

Dr. Payne, the medical expert who testified at the administrative hearing, stated that Ramos-Rosado's musculo-skeletal conditions equaled the requirements of the listing of

José Ramos-Rosado v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 12

impairments.  The ALJ concluded, however, the testimony was not supported by clinical

signs and/or laboratory findings and thus was not credible.  (*Id.*, p. 18).[3]

        Insofar as the treating physician, Dr. José L. Zamora, a mental health professional

who treated Ramos-Rosado, he submitted several reports indicating the presence of panic

and major depressive disorders, a possible affective disorder secondary to cerebral lesion

and possible vascular dementia, with a poor prognosis.  Dr. Zamora submitted reports

dated October 11, 2005, April 7, 2006 and May 16, 2007, as well as a summary report dated

May 16, 2007.  Dr. Zamora indicated the patient's memory, attention, concentration,

judgment and insight were poor.  The ALJ noted, however,  Ramos-Rosado provided an

adequate history of the symptoms of his mental condition and Dr. Zamora besides the

reports failed to include progress notes of the extensive treatment. The absence of such

progress notes was considered by the ALJ as depriving him from analyzing the pattern of

the treatment and its effect on the patient.  (*Id.*, p. 19).   Still, the reports submitted by Dr.

Zamora were not vague, sparse or incredible simply for the lack of progress notes being

attached to same. (Docket No. 5, Transcript, pp. 220-254, 294-295).  Treating physician's

reports should be accorded great weight, specially when their opinions reflect expert

judgment based on a continuing observation of the patient's condition over a prolonged

period of time.  20 C.F.R. §404.1527(d)(2); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.

1999).

---

        [3]  Although it is clear that it is within the Secretary's province to accord greater weight to the report or testimony
of a medical expert commissioned by the Secretary, in the present case the ALJ chose rather to disregard same.
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426; Lizotte v. Secretary of Health and Human Services, 654 F.2d
127, 130 (1ˢᵗ Cir. 1981).

A consultative evaluation by Dr. Alberto Rodríguez dated May 17, 2005, refers to an individual who was receiving psychiatric treatment by Dr. Zamora.  The evaluation showed he appeared apprehensive, depressed and with psychomotor retardation.  The affect was restricted and the mood depressed.  The flow of thought was slow, logical, coherent and relevant.  The content of thought displayed low self-worth, helplessness and hopelessness.  Attention and concentration were diminished and the patient was easily distracted and could not follow the backward sequence.  He was oriented.  The diagnosis was consistent for DSM IV 296.23 (major depressive disorder severe without psychotic features). The prognosis was poor and the patient was not considered able to handle funds.  (Docket No. 5, Transcript, pp.  182-185).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria.  Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion".  Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938).  The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4]  The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error.  See  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

---

[4]  Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

José Ramos-Rosado v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 14

Additionally, the ALJ needs also to consider the aggregate effect of the entire constellation of ailments, including those impairments that may on isolation be considered not severe. 20 C.F.R. §404.1523. The perusal of the record as a whole fails to support substantial evidence to support the administrative decision in this case. Furthermore, the hypothetical questions to the vocational expert did not present the complete panoply of established conditions that could have served as substantial evidence to the determination that plaintiff Ramos-Rosado could perform his past relevant work or other work presented for assessment within the residual functional capacity determined. If a vocational expert's testimony is to have probative value, the hypothetical questions posed must contain all relevant facts. Arocho v. Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982) (in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from medical authorities).

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole, for which reason it is REMANDED for further proceedings consonant with this opinion.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's

José Ramos-Rosado v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2048 (CVR)
Page No. 15

decision is not supported by said substantial evidence criteria.  As such, the Commissioner's

decision is **REMANDED**.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 9th day of January of 2013.

S/CAMILLE L. VELEZ-RIVE

CAMILLE L. VELEZ RIVE

UNITED   STATES   MAGISTRATE   JUDGE